THE STATE OF OHIO *v.* TACKETT.

(Nos. 87TRD1230 and 87TRD1231—
Decided August 21, 1987.)

Ashtabula County Court,
Eastern Division.

*Gregory J. Brown,* prosecuting attorney, and *Steven Phillips,* for plaintiff.

*Thomas C. Brown,* for defendant Joey Tackett.

GARY L. YOST, J. This case was called for trial. The defendant appeared with his counsel, Thomas C. Brown. The state of Ohio was represented by Assistant Prosecutor Steven Phillips. The prosecutor advised the court that it was his understanding and intention that the state would go forward on defendant's motion to suppress. Therefore, the court's previous order overruling the motion was vacated. Thereupon, the court received evidence and testimony on defendant's motion to suppress and/or motion to dismiss.

The court makes the following findings:

1. On April 23, 1987, Deputy Cary Nelson observed the defendant, whom he knew personally, and recognized, driving a motor vehicle.

2. Deputy Nelson had arrested the defendant on a previous occasion,

approximately one or one and a half months before. At that time, Deputy Nelson had received information that defendant's operator's license was under suspension.

3. On April 23, 1987, Deputy Nelson did not observe any other violation of law committed by the defendant.

4. The deputy signaled for the defendant to stop and he did stop the defendant, based upon the possibility that the defendant might still be under a license suspension.

5. At the time of the stop on April 23, 1987, the only fact known to the officer tending to show that the defendant was committing an offense was the officer's recollection concerning the status of defendant's operator's license one or one and a half months prior to the April 23 stop.

6. The deputy asked the defendant for his operator's license, to which the defendant replied, "You know I don't have a driver's license."

7. The deputy radioed his dispatcher to have the defendant's license status checked with "LEADS." The dispatcher was unable to provide the requested information at that time since "LEADS" was "down."

8. Sometime later the dispatcher advised the deputy that "LEADS" indicated that the defendant's operator's license was under suspension and that the vehicle registration plates were for a different vehicle. The court notes that the defendant disputes the credibility of this testimony, since the transmission of this information is not reflected on defendant's Exhibit "B," the radio log for the time period in question.

9. The deputy then issued citations to the defendant for driving under suspension, R.C. 4507.02, and fictitious plates, R.C. 4549.08.

10. Defendant was released at the scene. Defendant's vehicle was towed.

The court holds that the determinative issue here involves the authority of the arresting officer, based upon probable cause, to initiate the stop and subsequent detention of the defendant, under the Fourth Amendment to the United States Constitution. The court has reviewed the authorities cited by counsel and concludes that this issue is resolved by *State* v. *Chatton* (1984), 11 Ohio St. 3d 59, 11 OBR 250, 463 N.E. 2d 1237. Essentially, that case holds that a driver of a motor vehicle may not be stopped and detained to determine the validity of his driver's license without the presence of specific and articulable facts upon which to maintain a reasonable suspicion that he is violating the law at the time he is detained in order to produce his driver's license. In this case, the officer candidly testified that he did not observe any other violation of law. The sole basis for stopping the defendant was the officer's recollection that the defendant's license was under suspension one or one and a half months before. It is well-settled that a court can not find probable cause to issue a search warrant on "stale" information. *State* v. *Gennett* (M.C. 1966), 6 Ohio Misc. 176, 35 O.O. 2d 368, 217 N.E. 2d 275; *Coyne* v. *Watson* (S.D. Ohio 1967), 282 F. Supp. 235, 45 O.O. 2d 128. It would seem all the more persuasive that a court should not permit the deprivation of one's personal liberty upon the basis of information which is a month or more old. The court can certainly take notice of the fact that there are any number of ways that persons can and will regain driving privileges, after they have been suspended. In the absence of some other basis for probable cause, it is not asking too much, in view of modern radio and telecommunications, to require a police officer to obtain confirmation of the license status of an individual he recognizes, through the

"LEADS" computer or some other source of record, prior to stopping that individual.

The court commends the officer on the candor of his testimony. The court also appreciates that the officer did attempt to check defendant's license status, but was unable to do so, because "LEADS" was "down." However, since the officer could not obtain the current information on the status of defendant's operator's license, and based on the authority of *Chatton, supra,* the court holds that the officer was not authorized to stop the defendant, in this case. Defendant's motion to dismiss the citations herein is therefore sustained.

*Judgment accordingly.*